[No. C030209. Third Dist. Nov. 8, 1999.]

In re the Marriage of EDUARDO and HILDA DACUMOS.
HILDA DACUMOS, Respondent, v.
EDUARDO DACUMOS, Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II, III and IV.

**COUNSEL**

Law Office of Thomas Upholt and Thomas Upholt for Appellant.

Hilda Dacumos, in pro. per.; Law Office of Douglas Broomell and Douglas Broomell for Respondent.

## Opinion

**MORRISON, J.**—Eduardo Dacumos appeals from a judgment awarding child support and attorney fees to his ex-wife, Hilda Dacumos. Eduardo contends the trial court abused its discretion in imputing rental income to determine his income, including the entirety of his 401(k) plan distributions in determining his income, in excluding Hilda's second job from her income, and in awarding Hilda attorney fees. We affirm.

### Factual and Procedural Background

Hilda and Eduardo were married in 1989 and had a son the following year. They separated March 4, 1991. A judgment of dissolution was entered in 1992, with jurisdiction reserved on other issues, including child support.

In 1996, Hilda moved for an order for child support. She declared that Eduardo had paid $650 a month child support when they separated. He had decreased the support without explanation and was now paying only $350 a month.

In response, Eduardo explained that he had been laid off from his job as an engineer and had been plagued with health problems. He had been diagnosed with a panic disorder that limited his ability to work. He was currently working part-time for a law office and was unable to obtain employment in the engineering field. He had depleted funds in his retirement plan to meet his financial obligations. He was able to pay only $350 a month in child support. His income and expense declaration indicated he had income of just over $2,000 a month. This income included a rental property in South San Francisco, which had been rented for $1,000 a month, but after a vacancy was rented for $500 or $750 a month. The rent exceeded expenses by only about $1,000 a year.

Eduardo was ordered to pay $400 a month in child support, plus $76 a month for tuition. The order was based on Hilda's monthly wages of $5,349 and Eduardo's income from self-employment of $2,013 and other income of $234 a month.

In 1998, Hilda filed an at-issue memorandum. Hilda requested the $400 a month child support be continued and that the court determine there was an arrearage of $7,616. Hilda's income and expense declaration showed she had two jobs in 1997. She worked full-time as a nurse at Kaiser Permanente for $67,423.62 a year, and had a part-time job at Methodist Hospital from which she received $5,599.87. She listed as community assets, real property located

on Erin Drive in Sacramento and a Nolte Associates 401(k) plan of unknown value.

The parties entered into a marital settlement agreement that was approved by the court. Hilda was awarded legal and physical custody of the child. Their separate property was confirmed and Eduardo was awarded the property in Sacramento and contributions to the Nolte Associates 401(k) plan. There was no agreement on child support.

Eduardo provided a new income and expense declaration that indicated his expenses exceeded his income. He made $9,400 a year as a legal assistant, but he had two rental properties that lost money. The property in South San Francisco was rented for $550 a month and lost almost $2,000 in one year. The property in Sacramento was rented for $375 a month and lost over $11,000.

The court ordered Eduardo to pay $832 a month in child support. The court based its order on Hilda's wages consistent only with her full-time job. It found she had a second job because Eduardo was unwilling to support his child. The court imputed income to Eduardo of $2,000 a month, based on his income of $4,000 a month in 1994. It also considered $2,900 a month of additional income, consisting of distributions from pension investments and imputed rental income. The court determined the imputed rental income by considering both the fair market rental value of his properties and his net equity in the properties of $200,000 to $250,000. The court ordered Eduardo to pay Hilda $2,500 in attorney fees. There was no request for a statement of decision.

## DISCUSSION

### I

Eduardo contends the trial court abused its discretion in imputing rental income in determining his income for child support purposes. He contends the only express provision permitting imputation of income is Family Code section 4058, subdivision (b), which provides: "The court may, in its discretion, consider the earning capacity of a parent in lieu of the parent's income, consistent with the best interests of the children." Eduardo argues "earning capacity" is limited to income derived from employment and does not include imputed rental income.

"The fundamental principle of statutory interpretation is to ascertain the legislative intent in order to effectuate the purpose of the law. [Citations.] The statute should be construed with reference to the entire statutory

system of which it forms a part so that harmony may be achieved among the various provisions. [Citation.] In determining intent, we first look to the words used. [Citations.]" (*People* v. *Martinez* (1987) 188 Cal.App.3d 1254, 1258 [233 Cal.Rptr. 877].)

The cases that have considered the definition of "earning capacity" in Family Code section 4058 have followed that set forth in *In re Marriage of Regnery* (1989) 214 Cal.App.3d 1367, 1372 [263 Cal.Rptr. 243]: "Earning capacity is composed of (1) the ability to work, including . . . factors such as age, occupation, skills, education, health, background, work experience and qualifications; (2) the willingness to work exemplified through good faith efforts, due diligence and meaningful attempts to secure employment; and (3) an opportunity to work which means an employer who is willing to hire. [Citations.]" (See, e.g., *In re Marriage of Simpson* (1992) 4 Cal.4th 225, 234 [14 Cal.Rptr.2d 411, 841 P.2d 931]; *In re Marriage of LaBass & Munsee* (1997) 56 Cal.App.4th 1331, 1337-1338 [66 Cal.Rptr.2d 393]; *In re Marriage of Paulin* (1996) 46 Cal.App.4th 1378, 1383 [54 Cal.Rptr.2d 314]; *In re Marriage of Padilla* (1995) 38 Cal.App.4th 1212, 1218 [45 Cal.Rptr.2d 555]; *County of Yolo* v. *Garcia* (1993) 20 Cal.App.4th 1771, 1781 [25 Cal.Rptr.2d 681].)

■ The question we must answer is whether earning capacity is limited to income from work or whether the court may also consider the parent's ability to receive income from assets. In the cases cited above, the issue was earning capacity from work. There was no issue as to whether earning capacity could be based on income from sources other than work. ■ We do not read these cases to limit the definition of earning capacity as cases are not authority for propositions not considered. (*Roberts* v. *City of Palmdale* (1993) 5 Cal.4th 363, 372 [20 Cal.Rptr.2d 330, 853 P.2d 496].)

■ In *In re Marriage of Regnery, supra*, 214 Cal.App.3d at page 1372, the court adopted the definition of earning capacity from the law of workers' compensation. In worker's compensation the income at issue is solely that from work, so such a limited view of earning capacity is appropriate. In the context of child support, however, income is broadly defined to include "income from whatever source derived." (Fam. Code, § 4058, subd. (a).) Accordingly, "earning capacity" should also be given a broad interpretation. The language is susceptible to a broader interpretation than the ability to earn from work. "Earning" need not be limited to payment for work; it may also be defined as: "something (as wages or dividends) earned as compensation for labor or the use of capital." (Webster's New Internat. Dict. (3d ed. 1971) p. 714, col. 2.) "Earn" means "to bring in by way of return." (*Ibid.*)

This broader definition of earning capacity to include income that could be derived from income-producing assets as well as from work is in accord

with the legislative intent. In calculating child support, the state's top priority is the interests of the children. (Fam. Code, § 4053, subd. (e).) Supporting a child according to the parent's circumstances and station in life is a parent's first and principal obligation. (Fam. Code, § 4053, subd. (a).) Child support orders must ensure that children receive sufficient support. (Fam. Code, § 4053, subd. (*l*).) Just as a parent cannot shirk his parental obligations by reducing his earning capacity through unemployment or underemployment, he cannot shirk the obligation to support his child by underutilizing income-producing assets.

The trial court did not err in imputing rental income based on the fair market rental value of the properties and Eduardo's equity therein in calculating his income.

## II-IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Blease, Acting P. J., and Nicholson, J., concurred.

---

*See footnote, *ante*, page 150.