[No. F055130. Fifth Dist. Apr. 23, 2009.]

In re the Marriage of DANNY C. and SHANNON HOPKINS.
DANNY C. HOPKINS, JR., Movant and Respondent, v.
SHANNON HOPKINS, Respondent;
KERN COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES,
Objector and Appellant.

**COUNSEL**

Edmund G. Brown, Jr., Attorney General, Douglas M. Press, Assistant Attorney General, Paul Reynaga, Linda M. Gonzalez and Sharon Quinn, Deputy Attorneys General, for Objector and Appellant.

The Myers Law Group, David P. Myers and D. Smith for Movant and Respondent.

No appearance for Respondent.

**OPINION**

**CORNELL, J.**—Appellant Kern County Department of Child Support Services (the Department) levied on the bank account of Danny C. Hopkins, Jr. (Danny),[1] and a third party, pursuant to Family Code section 17450 et seq.,[2] to satisfy child support arrearage. The trial court released the levy over the objections of the Department. We conclude that Danny was exempt from levy pursuant to section 17450, subdivision (c)(2) because his sole income was from Social Security disability insurance (SSDI) benefits. Thus, the trial court did not err and we will affirm the order.

---

[1] We will refer to Danny and Shannon Hopkins by their first names, not out of disrespect but to avoid any confusion to the reader.

[2] All further statutory references are to the Family Code unless otherwise noted.

## FACTUAL AND PROCEDURAL SUMMARY

The facts are not disputed.

Danny was a noncustodial parent and obligated to pay $600 per month in child support. Danny's sole income was from SSDI benefits. In December 2006, the Department obtained a wage assignment order requiring the Social Security Administration to withhold $750 per month for current and past due child support from the benefits due Danny.

In May 2007, the Department was notified that Danny's children were receiving $742 per month from Social Security, an amount that was derived from Danny's SSDI benefits, and which was paid to the custodial parent, Shannon Hopkins (Shannon). Shannon also received a retroactive payment of benefits in the amount of $2,322. Current child support payments were modified to zero effective May 1, 2007, because the monthly payment from Social Security exceeded the monthly child support obligation.

After crediting the retroactive payment from Social Security, child support arrearage was $10,804 as of May 2007. The withholding order was amended to require Social Security to withhold $150 per month from the benefits paid to Danny to be applied to the arrearage. The sum of $150 was withheld in June and July 2007. In August 2007, two withholdings occurred, one on August 3 and the other on August 31. Each withholding was in the amount of $150. The August 3 withholding represented the amount withheld from Danny's August SSDI payment; the August 31 withholding was from Danny's September SSDI payment.

The Department credited all amounts withheld toward the arrearage but maintained that no payment had been received in September 2007, so Danny was in default on payment of his arrearage. Consequently, pursuant to section 17450 et seq., the Department levied on an account held in the name of Danny and his fiancée, Melissa Bruhanski, and received the amount of $10,746.

Danny claimed that all or a portion of the amounts levied upon should be exempt. Danny and Bruhanski both signed the form claiming an exemption, noting that at least some of the funds levied upon represented unemployment payments received by Bruhanski and that she had three children residing with them.

A hearing was held on December 28, 2007, regarding Danny's claim of exemption. The Department appeared through counsel; Danny appeared in propria persona.

During the hearing, the trial court asked whether the Department was crediting Danny for the amount of derivative benefits being paid by Social Security to the custodial parent that were in excess of the monthly support obligation as required by law. The Department indicated that it was not applying the $142 per month in excess benefits toward the arrearage as it was unaware of its obligation to do so.

The Department also verified an order for a wage assignment was in place with Social Security. Danny testified that the sum of $150 per month was being deducted from his SSDI benefits, with two deductions being taken in August 2007 because of the timing of the issuance of the Social Security checks. Danny testified that the sum of $150 was deducted on August 3 from the August 2007 SSDI payment and the sum of $150 was deducted on August 31 from the September 2007 SSDI payment.

Danny also testified regarding the source of the money in the account levied upon by the Department. The funds in the account were accumulated unemployment and child support payments received by Bruhanski, with a small amount of the funds coming from severance pay to Danny when he was forced to quit working.

Danny further testified that when he received the notice from his bank that the account had been levied upon, he contacted the Department to confirm the amounts that had been deducted and that he had made a payment each month toward the arrearage. He was told by the person with whom he spoke that he was current on his payments toward the arrearage.

The trial court stated the Department was "complaining . . . that they got $150 a few days too early as opposed to too late or not at all. I hardly think that in equity and justice I can regard that as being a missed payment which triggers the right to then levy on a bank account." The trial court went on to state, "[T]he Department seems to have overlooked the Social Security Act, which gives [Danny] the right, by law, to have credited towards his arrears any excess over and above the current amount of support paid by way of derivative benefits."

Prior to concluding, the trial court also indicated that the "arrears need to be examined with some little interest to see if, in fact, the amount he currently is alleged to owe needs to be adjusted in light of the fact that they are receiving derivative benefits in excess of the amount of ongoing support." The trial court ruled, "in essence, I am going to deny the claim of exemption. I am going to find that the Department improperly took the money." The trial court ordered the Department to refund the full amount levied upon because Danny was "not out of compliance with his child support arrears payment obligation."

Thereafter, the Department moved to vacate the order and for a new trial. The Department argued in its motion that the failure of the Department to credit Danny's arrearage for excess Social Security derivative benefits and the potential inaccuracy of the amount taken by levy were not issues that properly were before the trial court when it ruled. The Department further contended the trial court had no legal basis for releasing the levy after denying Danny's claim of exemption.

At the hearing on the motion, the Department stated its position that an obligor, such as Danny, who owed child support arrearages, was subject to levy, even if the obligor was current with payments on the arrearage. Further, the Department asserted that the "appropriate remedy is the automatic $3500 exemption" rather than release of the levy. The Department stated it would not object to releasing the automatic exemption amount of $3,500 to Danny, but maintained Danny was "still subject to levy by virtue of carrying an arrearage balance." The Department further acknowledged that the arrearage balance had been revised downward to $8,711.17 after crediting excess derivative payments.

When asked by the trial court for his position on the motion, Danny stated that the Department had taken "every dime we had" and Bruhanski's three children "had to do without Christmas." Danny maintained that he received a limited income from Social Security; the arrearage had accrued because of his disability and job loss; and he "agreed to everything" the Department had asked for to pay the arrearage. Danny also stated that the bulk of the funds the Department took by levy were child support payments for Bruhanski's three children and Bruhanski's unemployment.

The trial court noted that had the Department been crediting Danny's account correctly, the levy never would have issued. The trial court denied the motion, concluding that "equity" and "justice" required the prior order to stand because the Department would not have levied if it had properly credited Danny's account for the excess derivative payments and the withholdings. The Department appealed.

## DISCUSSION

The Department contends the trial court erred in releasing the levy because (1) section 17450 et seq. permit the Department to levy for child support arrearage, even if an obligor is current in making scheduled payments on the

arrearage; (2) Danny was not entitled to a statutory exemption; and (3) the trial court cannot invoke equitable considerations to disregard the mandate in section 17450 et seq.[3]

## I. *Legality of Levy*

### *Governing statute*

The delinquent child support obligations and Financial Institution Data Match System (FIDMS) statutory scheme, commencing with section 17450 et seq., was added in 2004. (Stats. 2004, ch. 806, § 6.) The FIDMS statutory scheme essentially provides a statewide mechanism for obtaining payment of child support arrearage. (§ 17500 et seq.)[4] Although enacted over four years ago, there is a dearth of reported case law addressing this statutory scheme.

### *The Department's argument*

It is undisputed that Danny was receiving SSDI benefits at the time the Department referred the child support delinquency for collection to California's Department of Child Support Services (CDCSS) pursuant to section 17450 et seq. It is also undisputed that the Department was fully aware at the time it referred the delinquency for collection that Danny was receiving SSDI benefits.

■ The Department maintains that Danny's assets were subject to levy pursuant to section 17453, subdivision (j), even if Danny was in compliance with scheduled payments. Section 17453, subdivision (j)(2) does provide that the assets of an obligor who owes child support arrearage, even though in compliance with scheduled payments on the arrearage, is subject to levy, but the first $3,500 of the obligor's assets are exempt.

What the Department ignores is section 17450, subdivision (c)(2).

The Department did not discuss this section until we asked it to. Section 17450, subdivision (c)(2) states: "If an obligor is disabled, meets the federal Supplemental Security Income resource test, and is receiving Supplemental Security Income/State Supplementary Payments (SSI/SSP), or, but for excess income as described in Section 416.1100 and following of Part 416 of Title 20 of the Code of Federal Regulations, would be eligible to receive as

---

[3] We find this position troubling. If the Department had followed the mandate of section 17450 et seq., this case would not be here.

[4] Danny filed requests for judicial notice with this court on February 26 and March 3, 2009. No objection to the requests having been filed, we take judicial notice of the documents specified in those requests.

SSI/SSP, pursuant to Section 12200 of the Welfare and Institutions Code, and the obligor has supplied the local child support agency with proof of his or her eligibility for, and, if applicable, receipt of, SSI/SSP or Social Security Disability Insurance benefits, then the child support delinquency shall not be referred to the department for collection, and, if referred, shall be withdrawn, rescinded, or otherwise recalled from the department by the local child support agency. The department shall not take any collection action, or if the local child support agency has already taken collection action, shall cease collection actions in the case of a disabled obligor when the delinquency is withdrawn, rescinded, or otherwise recalled by the local child support agency in accordance with the process established as described in paragraph (1)."

■ We find nothing in any other provision of section 17450 et seq. that creates an exception to section 17450, subdivision (c)(2). The collections and enforcement provisions commencing with section 17500 specifically state that they are applicable, *except* as provided in section 17450. (§ 17500, subd. (c).)

This court requested additional briefing from the parties regarding the applicability and interpretation of section 17450, subdivision (c)(2). In its letter brief, the Department contends that section 17450, subdivision (c)(2) sets forth a four-part test for eligibility and Danny has met only two parts. According to the Department, the four elements to be satisfied are (1) the obligor must be disabled; (2) the obligor must meet the federal supplemental security income resource test; (3) the obligor must be receiving supplemental security income/state supplementary payments (SSI/SSP) or, but for excess income, would be receiving SSI/SSP payments; and (4) the obligor must supply the Department with proof of receipt of SSI/SSP or SSDI benefits. The Department concedes that Danny is disabled and has provided proof of receipt of SSDI benefits, thus satisfying parts one and four of the four-part test as articulated by the Department. The Department contends, however, that Danny has not satisfied parts two and three.

We find the Department's contention disingenuous. The Department asks us to interpret a statute in a manner that makes no sense.

First, an obligor cannot meet both parts two and three of the Department's stated test because they are mutually exclusive. Either an obligor meets the income test and is receiving SSI/SSP payments *or* the disabled obligor does not meet the income test and therefore is not receiving SSI/SSP payments, but receives SSDI benefits instead. Second, if an obligor meets parts one and four of the Department's stated test, then the obligor necessarily must have met either part two or three.

■ An obligor who is disabled and who has provided proof of receipt of SSI/SSP or SSDI payments necessarily must have either met the income test

for receipt of SSI/SSP payments or exceeds the income requirement but is otherwise eligible. Title 20 of the Code of Federal Regulations part 416.202 (2009) sets forth the eligibility requirements for receipt of SSI/SSP payments: A person who (1) is disabled, (2) is a citizen or legal resident, (3) meets the income limitations, and (4) is not in violation of parole or probation or fleeing prosecution for a crime.

Under the Department's interpretation, a disabled obligor who does not meet the income test for SSI/SSP payments, but who is receiving SSDI payments, would be subject to collection. The Department maintains that proof of receipt of SSDI payments merely means that an obligor is "disabled and that at some point in his life he earned wages." The Department's interpretation of section 17450, subdivision (c)(2) fails to give meaning to each phrase of the subdivision. Interpreting the subdivision in the manner suggested by the Department would vitiate the express reference to SSDI payments and render the reference to SSDI benefits in the subdivision surplusage.

■ In analyzing the code section, we look to the plain language of the statute itself and to legislative intent. (*Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1152 [45 Cal.Rptr.3d 21, 136 P.3d 821].) To give meaning to the reference to receipt of SSDI benefits in section 17450, subdivision (c)(2), a disabled obligor who has provided proof of receipt of SSDI benefits would be exempt from collection efforts. In our view, this is the only logical interpretation of this subdivision.

Further, legislative history indicates that disabled obligors receiving SSDI benefits were intended to be exempt from collection. Assembly Bill No. 891 (2001–2002 Reg. Sess.), enacted in 2001, added section 17400.5 to the Family Code and amended Revenue and Taxation Code section 19271, subdivision (e)(3).

Section 17400.5 contains language that is substantially similar to section 17450, subdivision (c)(2). Section 17400.5 provides that when an obligor has an ongoing child support obligation being enforced by a local child support agency, and "the obligor is disabled, meets the SSI resource test, and is receiving [SSI/SSP] or, but for excess income . . . would be eligible to receive as SSI/SSP, . . . and the obligor has supplied the local child support agency with proof of his or her eligibility for, and, if applicable, receipt of, SSI/SSP or Social Security Disability Insurance benefits" then the local child support agency is required to prepare and file a motion to modify the support obligation.

The language of Revenue and Taxation Code section 19271, subdivision (e)(3) is identical to that of Family Code section 17400.5 and

provides that the child support delinquency shall not be referred to the Franchise Tax Board for collection or, if referred, withdrawn.

The Senate Rules Committee digest addressing Assembly Bill No. 891 (2001–2002 Reg. Sess.), which added Family Code section 17400.5 and amended Revenue and Taxation Code section 19271, subdivision (e)(3), stated one of the purposes of the bill was to provide that: "[U]pon proof of eligibility of a disabled noncustodial parent who receives SSI/SSP or SSDI, the local child support agency shall not refer his or her case to the State Franchise Tax Board, or shall recall the case from the board and cease collection action against that parent." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 891 (2001–2002 Reg. Sess.) as amended Sept. 7, 2001, p. 2, par. 3.)

The Franchise Tax Board also prepared a bill analysis of Assembly Bill No. 891 (2001–2002 Reg. Sess.), which stated that the bill would preclude the Franchise Tax Board from collecting delinquent child support in cases where the noncustodial parent is disabled and receiving monthly benefits from SSI/SSP or SSDI.

Section 17450, subdivision (c)(2) was added in 2004 as part of Assembly Bill No. 2358 (2003–2004 Reg. Sess.). It seems clear that the language of section 17450, subdivision (c)(2) was intended to harmonize this subdivision and the FIDMS child support collection scheme with the provisions of Revenue and Taxation Code section 19271, subdivision (e)(3). Family Code section 17450 provides that until the California Child Support Automation System (CCSAS) is fully operational, enforcement of the FIDMS scheme may be delegated to the Franchise Tax Board, to be enforced in accordance with sections "19271 to 19275, inclusive, of the Revenue and Taxation Code." (§ 17450, subd. (d).) Once the CCSAS is operational, enforcement of child support obligations may be shifted to the CDCSS. (*Id.*, subd. (e).)

■ To the extent the language of section 17450, subdivision (c)(2) is either vague or ambiguous, we interpret the language to mean that an obligor who is disabled and is eligible for or receiving *either* SSI/SSP *or* SSDI payments, *or*, who but for the federal SSI resource test would be eligible to receive SSI/SSP payments, is exempt from levy. This interpretation harmonizes section 17450, subdivision (c)(2) with other provisions of the Family Code and Revenue and Taxation Code regarding collection of child support obligations and effectuates the clear legislative intent. We conclude that a disabled obligor who provides proof of eligibility for and/or receipt of SSDI payments is exempt from levy under section 17450 et seq.

■ Here, the Department should not have referred the obligation for collection under the provisions of section 17450, subdivision (c)(2) and, once erroneously referred for collection, it should have been recalled or rescinded by the Department.

We conclude the trial court properly released the levy, as Danny's assets were not subject to levy for child support arrearage pursuant to section 17450, subdivision (c)(2).

## II. *Additional Concerns*

We are concerned with the handling of this case by the Department. This case started with the Department commencing collection after it received two payments from SSDI in August 2007 instead of one in August and one in September. Then it levied against the entire balance in the account without allowing the $3,500 exemption to Danny.

It continued when the Department acknowledged that it did not know it was supposed to credit any overage of SSDI benefits paid to the children against the arrearage. In effect, the Department was receiving more than the required $150 per month towards Danny's arrearage. It was not until the trial court brought this error to the Department's attention that the Department credited the extra payments and refunded the $2,035 taken by levy that exceeded the true amount of the arrearage.

Next, the Department continued to assert its right to the levied-upon amounts when it was undisputed that Danny was receiving SSDI benefits. As we have held, this was a clear violation of section 17450, subdivision (c)(2). Moreover, even after Danny obtained legal representation and his counsel raised this code section in respondent's brief and argued its applicability to Danny's case, the Department failed to respond or address this provision in its reply brief.

Finally, when we brought the potential applicability of section 17450, subdivision (c)(2) to the attention of the Department and requested its response, it took the nonsensical position discussed *ante*.

These actions have impacted more than Danny. They impacted Bruhanski and her three children. Danny's claim of exemption form, although inartfully drafted, did give notice that a portion of the funds levied upon were unemployment payments received by Bruhanski. Danny also testified at the initial hearing, and his testimony was uncontroverted, that the bulk of the monies levied upon constituted child support monies received by Bruhanski for her three minor children and Bruhanski's unemployment payments. This testimony placed the Department on notice that money it had obtained

through levy likely was not money belonging to Danny and/or was exempt from levy. (See, e.g., Code Civ. Proc., § 704.080, subd. (c).)

We hope this does not happen again.

## DISPOSITION

The order is affirmed. Costs on appeal are awarded to Danny C. Hopkins, Jr.

Ardaiz, P. J., and Vartabedian, J., concurred.