Filed 10/24/13  County of Ventura Child Support Serv. v. Dawson CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| COUNTY OF VENTURA CHILD SUPPORT SERVICES et al., <br><br>    Plaintiffs and Respondents, <br><br> v. <br><br> DONALD K. DAWSON, <br><br>    Defendant and Appellant. | 2d Civil No. B242771 <br> (Super. Ct. No. D285053) <br> (Ventura County) |

      Donald K. Dawson (father) appeals the trial court's denial of his petition to modify orders requiring him to pay Jessica Ortega (mother) $725 a month in child support for their five minor children, and awarding mother sole legal and physical custody of the children with no visitation to father.  Father contends the court abused its discretion in issuing both orders.  He also claims the court erred in refusing to terminate an income withholding order.  We affirm.

FACTS AND PROCEDURAL HISTORY

      Father and mother are the parents of five children ranging in ages from two to 12 years old.  Following the birth of the first child in 2001, the Ventura County Department of Child Support Services (CSS) filed a complaint against father to establish

parentage and child support.[1]  First, second, third, and fourth supplemental complaints were subsequently filed to establish parentage and support for each successive child following his or her birth.  After the fourth supplemental complaint was filed on November 16, 2011, father filed an order to show cause (OSC) requesting modification of the existing custody and visitation order, and seeking to set aside an income withholding order.[2]  Father and mother stipulated to the matter being heard by a commissioner.

Because father sought modification of the custody and visitation order, the matter was set for mediation as mandated by section 3170, subdivision (a).  On February 9, 2012, the mediator issued a recommendation that mother be granted sole legal and physical custody of the children with supervised visitation for father.  That same date, the court issued a temporary custody and visitation order in accordance with the mediator's recommendation.  A hearing on the issues of child support, custody, and visitation was set for March 27, 2012.

Following the March 27th hearing, the court entered a judgment requiring father to pay mother $725 a month in guideline child support effective December 1, 2011.  The court also rendered permanent the February 9th custody and visitation order.  Notice of entry of judgment was filed and mailed to father on April 2, 2012.

---

[1] CSS has been providing mother child support services throughout the proceedings due to her receipt of public assistance.  (Fam. Code, § 17400 et seq.; Welf. & Inst. Code, § 11477, subd. (a).)  All further undesignated statutory references are to the Family Code.

[2] The custody and income withholding orders are not part of the record on appeal because father did not designate them for inclusion.  According to father, the custody order was entered in June 2005 and awarded him joint custody of the two oldest children. He claims that he sought to modify the order to include the three youngest children after his relationship with mother became acrimonious and she refused to allow him any visitation with the children.  He further claims that CSS began withholding support from his income in November of 2011.  The register of actions reflects that father was ordered to pay $304 a month in guideline support beginning July 1, 2005.  In support of his modification petition, father attached bank records demonstrating that he paid mother $380 a month in support from February 2001 through December 2011.

Father subsequently filed a complaint against the mediator, claiming she had been biased against him and had failed to follow the statutory rules for mediation. On April 18, 2012, the court on its own motion set aside the previously-imposed custody and visitation order and awarded mother sole legal and physical custody of the children with no visitation for father. The court set the matter of custody and visitation for mediation before a different mediator on May 8, 2012, and ordered the parties to attend.

On April 30, 2012, father filed an OSC seeking modification of the child support order entered on March 28, 2012, and the custody and visitation order entered on April 18, 2012. The petition claimed that father "never had the opportunity to state [his] position in mediation" with regard to custody and visitation. The petition further alleged that in calculating guideline child support CSS had "erroneously listed the child support I pay to another relationship incorrectly. They list it as $350 but it should be listed at $850 per Court Order #D335520." Father claimed he had sent CSS a letter along with a copy of the order requesting correction of the error. He also complained that the support order should be adjusted to account for (1) the $267 in Social Security Disability Insurance (SSDI) benefits that mother received every month as a result of father's disability; and (2) the fact that father and mother had "50/50" visitation. Father further asserted that CSS had been unlawfully withholding support from his income since November 2011. His attendant income and expense declaration states that his total monthly income, which consists of state disability and an annuity, totals $1,327, while his monthly expenses (which purportedly include $850 a month in support for a single child from another relationship) total $1,600.

The hearing on the OSC was set for May 31, 2012. In the meantime, the matters of custody and visitation were called for mediation on May 8, 2012, in accordance with the court's April 18th order. Father attended, but the proceedings were suspended after he "left mediation and did not return."

When the hearing on father's modification petition was called on May 31, 2012, father asked the court to set the matters of custody and visitation for yet another mediation. He claimed that the second mediator had simply "pick[ed] up where [the first

3

mediator] left off" and "was trying to lure [him] into an argument or something." He also complained that the second mediator appeared to have prior knowledge of the case, which rendered her biased against him.

The court questioned the parties regarding how much time father spent with his children under the prior custody order. Mother replied that she and father had shared custody of their two oldest children in 2005, yet he had simply "stopped picking [them] up" and they had "never spent the night with him." Father conceded this, yet explained that "[t]he problem was, the cops kept getting involved . . . [a]nd my daughters didn't like it. . . . So I had to deal with [mother]. That's where we got three more kids." Father then offered that he "just [hadn't] seen [the children] since September really . . . [after] she told me to stop coming around."

The court told father it was unable to modify the custody and visitation order "because it sounds like you haven't spent any time with the children. I need some input from the mediation department about some kind of reunification process if you really are serious about getting [them] back[.]" The court indicated it was "willing to give . . . mediation . . . one more try" and warned father, "if you walk out on this next time, then I'm not sure what I can do for you[.]" A third mediation was set for June 5, 2012, along with a continued hearing on father's petition for modification of child support.

At the June 5th hearing, the court was notified that father had declined to participate when the matter had been called for mediation that morning. On the issue of support, counsel for CSS asserted that father had failed to show a change of circumstances that would warrant the requested modification. Counsel also stated "there's something drastically disproportionate going on" to the extent that father was actually paying $850 in support for one other child—which amounts to well over half of his $1,327 monthly gross income—yet would be required to pay only $537 for all five children in the present matter if the requested modification were granted. Counsel also represented that "[t]he mother in the other case [Yolanda Velasquez] verified that [father] was paying $350 a month. . . . He has a stipulated judgment from December 2011

4

agreeing to a non-guideline amount of $850 a month. And he did show me some documentation indicating transfers. I did not . . . go through the dates to see exactly when this was paid."

Father did not respond to counsel's remarks regarding the amount of child support he actually paid to Velasquez. As to the mediation, he offered, "I don't refuse mediation. I just refuse to meet with that mediator because I filed a complaint on her. I have no confidence in her." Father then stated he did not remember the court previously telling him "you don't get to choose and pick your mediator," nor did he understand what this meant. When the court asked father if there was anything else he wanted to say, father stated his belief that his constitutional rights were "being violated here in this courtroom." He also wanted the court "to prove venue," and added he was "rescind[ing] all contracts, signatures and agreements with this court . . . ." Father then exited the courtroom.

After father left, the court found that father had failed to show changed circumstances and accordingly denied without prejudice his modification petition. Father filed his notice of appeal from the court's order on July 23, 2012.

DISCUSSION

*Child Support Order; Motion to Augment Record on Appeal*

Father contends the court abused its discretion in denying his petition to modify the March 28, 2012, judgment ordering him to pay mother $725 a month in child support. He complains that the court's guideline support calculations failed to include either the $850 in above-guideline support he pays Velasquez for a child from their relationship, or the $267 in SSDI that mother receives every month on account of father's disability.

Rulings on petitions to modify child support orders are reviewed for an abuse of discretion. (*In re Marriage of Butler & Gill* (1997) 53 Cal.App.4th 462, 465.) Generally, a support order may be modified at any time (§ 3651, subd. (a)), but only if there has been a material change of circumstances since the last order (*In re Marriage of Khera and Sameer* (2012) 206 Cal.App.4th 1467, 1479). It is error to modify a support

5

order absent evidence of a material change of circumstances. (*Id.* at p. 1480.) The supporting parent bears the burden of proving changed circumstances. (*In re Marriage of Leonard* (2004) 119 Cal.App.4th 546, 556.)

Father made no effort, either in the trial court or on appeal, to demonstrate a material change of circumstances that would warrant modification of the child support order. Instead, he merely asserts that the child support order was erroneous in the first instance. That order was issued, however, pursuant to a final and appealable judgment from which appellant did not appeal. (§ 3554.) Moreover, we cannot construe father's notice of appeal to include that judgment because the notice was filed more than 60 days after father was served notice of entry of judgment.[3] Because father did not timely appeal from the child support order, we lack jurisdiction to review that order. Given the lack of any evidence or argument demonstrating changed circumstances, we are also precluded from finding that the court abused its discretion in denying father's modification petition.

In support of his claim that the court abused its discretion in denying his modification petition, father has moved to augment the record on appeal to include (1) a sworn statement from Velasquez dated June 5, 2013; (2) an audit report prepared by CSS on March 13, 2013; and (3) a request for complaint resolution father filed with CSS on May 24, 2012. We deny the motion because none of the proffered evidence was before the trial court when it issued the rulings that are the subject of this appeal. (Cal. Rules of Court, rule 8.155(a)(1)(A); *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.) We also decline to take judicial notice of evidence that was not part of the record when the judgment was entered. (*Vons,* at p. 444, fn. 3.) Father has not identified any exceptional circumstance that would lead us to take judicial notice of the evidence, or treat it as additional evidence under Code of Civil Procedure section 909. (*Ibid.*)

---

[3] Notice of entry of judgment was mailed to father on April 2, 2012, and his notice of appeal was filed on July 23, 2012. The deadline for filing a notice of appeal from the judgment was June 2, 2012, i.e., 60 days after father was served notice of entry of judgment. (Cal. Rules of Court, rule 8.104(a)(1)(A).)

Even if we agreed to consider this evidence, the result would be the same. At the hearing on father's modification petition, counsel for CSS stated that Velasquez had verified father was only paying her $350 a month in child support, notwithstanding that he had stipulated to a monthly payment of $850.  When given the opportunity to respond to this, father declined to do so and merely argued about his willingness to participate in mediation.  Moreover, Velasquez's declaration does not specify *when* father began paying her $850 a month, or how many payments he had made in that amount.[4] The CSS audit report and the complaint father filed with CSS are similarly unavailing.

*Income Withholding Order*

Father asserts that the court erred in refusing to terminate the income-withholding order imposed in November of 2011.  He claims the United States Constitution prohibits the enforcement of child support orders through income withholding.

The record does not reflect whether father is subject to an earnings assignment order issued by a judicial officer to section 5230, subdivision (a), or an income withholding order issued by CSS pursuant to section 5245.  Regardless of which type of order is at issue, father was notified of the right to request a hearing to challenge the order.  (§§ 5234, 5246, subd. (e).)  Because the record does not show that father made such a request, he cannot complain on appeal that the order was erroneous.

---

[4] Unauthenticated documents improperly attached to father's notice of appeal purport to demonstrate that he paid Velasquez $850 in April and May of 2012, and made two payments totaling $800 in March of 2012.  Father stipulated to the $850 monthly payment—which is well above the guideline amount he otherwise would have been ordered to pay—back in December of 2011, shortly after the fourth supplemental complaint was filed in this case.  An email attached to father's modification petition indicates that he and Velasquez were still romantically involved as recently as September 29, 2011.  While the Family Code provides that any support a parent pays for children from another relationship is to be deducted from that parent's net disposable income in calculating his or her support obligation (§ 4059, subd. (e)), the court may deviate from his rule if there is evidence the parent has deliberately exploited it as a means of favoring one or more children to the detriment of other children the parent has a duty to support.  (See § 4057, subd. (b)(5) [presumption that amount of child support established by guidelines is correct may be rebutted by showing that "[a]pplication of the formula would be unjust or inappropriate" under the given circumstances].)

In any event, state and federal law mandate that every order for child support must be accompanied by an earnings assignment or income withholding order. (§§ 5230, 5246, subds. (b) & (c); 42 U.S.C. § 666.) Father's claim that the order violates his due process rights is belied by the fact that the order included both notice and an opportunity to be heard. (§§ 5234, 5246, subd. (e).) His assertion that child support enforcement is merely "a common, commercial, civil debt" is simply inaccurate. It has long been recognized that child support "is not an 'ordinary debt' but rather a court-imposed obligation to provide for one's child." (*Williams v. Williams* (1970) 8 Cal.App.3d 636, 639.) Payment of child support is a "fundamental" duty that transcends all other financial obligations. (§ 4053, subd. (a).) Contrary to father's claim, he need not be in arrears to be subject to a withholding order. (§§ 5230, subd. (a), 5246.) His claim that the order violates federal withholding limits was not raised below and is thus forfeited. (*In re Aaron B.* (1996) 46 Cal.App.4th 843, 846.) In any event, the order withholds less than 50 percent of his income and is thus lawful. (15 U.S.C. §§ 1673(a) - (b), 1675.)[5]

Father also cites section 17450 for the proposition that he cannot be subject to a withholding order because he receives SSDI benefits. The statute, however, merely prohibits the seizure of an SSDI beneficiary's assets from a financial institution; it does not prohibit the enforcement of a child support order through income withholding. (§ 5246; *In re Marriage of Hopkins* (2009) 173 Cal.App.4th 281, 290.)

*Custody and Visitation Order*

Father claims the court abused its discretion in granting mother sole legal and physical custody of the couple's five children and denying visitation to father.[6] He

_____

[5] Father cites to a letter issued by the federal Office of Child Support Enforcement as authority for the proposition that only 15 to 20 percent of his income may be withheld for child support. Suffice to say that the letter does not stand for the asserted proposition.

[6] CSS declines to directly respond to father's claim that the custody and visitation order is erroneous. (§ 17404, subd. (e)(4).)

claims there is no evidence to support the first mediator's recommendation regarding custody and visitation, and that both mediators assigned to the matter in accordance with section 3170 were biased in favor of mother and were unprofessional. He further claims that the court issued a temporary custody order in violation of section 3064, and that both the temporary and permanent custody orders (1) were motivated by a desire to obtain federal funding; (2) effectively terminated father's parental rights, such that he is not obligated to pay child support; and (3) were issued in violation of sections 3082, 3100, and 3183. In the event we reject all of these claims, father asks us to terminate his support obligations or impose sanctions against mother due to her refusal to allow him visits with the children and her obstruction of the parent/child relationship.

All but the first two claims were not raised below and are thus forfeited. As for the preserved claims, the court expressly found that father did not receive a fair hearing before the first mediator and vacated its order adopting the mediator's recommendation regarding custody and visitation. Moreover, nothing in the record supports father's claim that he could not receive a fair mediation before the second mediator. Because father refused to participate in the mediation, he is estopped from challenging the denial of his modification petition as to custody and visitation. (*In re Marriage of Economou* (1990) 224 Cal.App.3d 1466, 1487 [interpreting former Civ. Code § 4607].)

The additional contentions interspersed throughout father's briefs are forfeited because they are not presented under individual headings or supported by proper argument and authority. (See, e.g., *Nickell v. Matlock* (2012) 206 Cal.App.4th 934, 947 [conclusory assertions in brief unsupported by citations to evidence or legal authority are forfeited]; *Alameida v. State Personnel Bd.* (2004) 120 Cal.App.4th 46, 59 [reviewing courts "may disregard arguments not properly presented under appropriate headings"]; *Horowitz v. Noble* (1978) 79 Cal.App.3d 120, 138-139 [reviewing court is not required to

9

conduct independent, unassisted search of record for error].)

The judgment is affirmed. Costs to respondent County of Ventura Child Support Services.

NOT TO BE PUBLISHED.


PERREN, J.


We concur:


GILBERT, P. J.


YEGAN, J.


10

Rocky J. Baio, Temporary Judge[*]

Superior Court County of Ventura

_____

Donald K. Dawson, in pro. per., for Appellant.

Kamala D. Harris, Attorney General, Julie Weng-Gutierrez, Senior Assistant Attorney General, Linda M. Gonzalez, Supervising Deputy Attorney General, Ricardo Enriquez, Deputy Attorney General, for Respondent County of Ventura Child Support Services.

No appearance for Respondent Jessica E. Ortega.

_____

[*] (Pursuant to Cal. Const., art. VI, § 21.)