Filed 8/3/16  M.G. v. M.S. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| M.G., | C077241 |
| Plaintiff and Respondent, | (Super. Ct. No. P9397) |
| v. | |
| M.S., | |
| Defendant and Appellant. | |

Appellant father challenges a $1,399 child support order for his son despite his ownership of income-producing properties in Santa Cruz, his failure to provide the mandatory rental schedule, his redaction of many of his expenses on his bank statements, his sizeable unexplained monthly deposits, his history of lucrative marijuana sales, his designation of a paltry appellate record, and the receipt of regular monthly pension and disability payments.  As meager as the record is, there is sufficient evidence to support the trial court's award and no evidence the court abused its discretion in making the child support order or in awarding the child's mother $5,000 in attorney fees.  We affirm.

1

**FACTS**

It is nearly impossible to construct a cohesive narrative from the skimpy appellate record before us. There is no petition. Prior orders are not included. Appellant does not include his own trial brief, if indeed he ever filed one. He improperly attempts to introduce new evidence on appeal by attaching a rental schedule as an exhibit to his opening brief. The schedule itself is not supported by many of his citations to the record. He does not cite to the reporter's transcript. He admits to receipt of pension and disability payments for a combined $3,561 in monthly income, but he declares he derives zero income from his rental properties. The best we can do on this record is to piece together enough evidence to support the trial court's rulings. Thus, we begin with the pertinent findings.

The trial court attributed $8,361 in monthly income to appellant based on the following allocation: disability income of $2,033; pension of $1,528; fair market value of the rent from the roommate of $500; rental income from Santa Cruz properties of $2,000; and unexplained income of $2,300. Appellant contends the disability income cannot be counted as income for determining his child support obligation as a matter of law. He also contends the trial court abused its discretion by imputing $2,000 as monthly rental income and $2,300 as unexplained income.

***Income-Producing Properties in Santa Cruz***

Appellant owns two rental properties in Santa Cruz (referred to as the King and Western properties.) There is some evidence that the King property's market value is $675,996 and the Western property's value is $806,570. The Western property, however, was also appraised at $876,000. Appellant testified he has substantial equity in both properties: over $200,000 in Western and $425,000 in King. On his most recent income and expense declaration, he represented that he had no rental income on these properties.

Reasonable rent for the properties was contested. For 2013, appellant received $3,100 a month for his King property and $3,800 for his Western property. He testified

2

the rent for King had declined to $2,100.  On appeal, appellant complains that his expenses were not properly deducted from the rental income he received.  But he had commingled his personal and business expenses in one account, he redacted many of the expenses set forth in his bank statements, and he failed to introduce a rental schedule as evidence of the income produced and the expenses incurred on each of the properties.[1]  On his income and expense declaration, he listed $1,488 in personal monthly loan payments but conceded at the hearing that he had not actually made any payments on these loans in many years.  Respondent's attorney characterizes them as " 'phantom payments.' "

Thus the trial court relied on evidence of appellant's bank deposits.  In 2012 appellant made total deposits of $147,606.19, or $12,300.52 in monthly gross deposits.  His deposits in 2013 were $126,833.05, or $10,518 per month.  In April and May of 2013 alone he made deposits of $17,311.  Yet he claimed his monthly income was a mere $3,561.  Respondent asked the court to impute an additional $3,220 in unexplained monthly income.  His monthly mortgage payments were $3,637.07 for the Western property (including property taxes) and $1,697.94 for the King property, or a combined monthly mortgage obligation of $5,335.01.  As mentioned, the bank statements were heavily redacted and therefore it was impossible to determine whether additional expenses were attributable to the Western and King properties.  Appellant testified to random expenses he incurred, including the cost of a new water heater and new piping

_____

[1] Judicial Council form No. FL-150, income and expense declaration, directs a party claiming rental property income to "[a]ttach a schedule showing gross receipts less cash expenses for each piece of property."  Appellant did not attach such a schedule to his income and expense declaration.

under the house, but he never offered a complete rental schedule listing all the income and expenses for the properties.[2]

On his 2012 tax return, the most recent return he had filed before the March 2014 hearing, he took a total of $31,306 in depreciation expenses on the properties. He shows a loss of $81,324 and carried forward a $74,739 tax loss. He did not pay any taxes and would not have to pay them in the foreseeable future.

Appellant's tenants have grown marijuana on the properties with his permission. Respondent testified that appellant grew marijuana on the King property and made between $5,000 and $10,000 at each harvest.

### Chico House

Appellant denied that he owned the house he lived in or that he had asked his sister to purchase it or to lend him the money to finance it. His sister's name is on the title to the house, but she has never lived in it. Respondent contends she purchased the house for $250,000. Appellant lives in the house and pays the full amount of the mortgage, purportedly as rent. He rents a room in the house for $200 a month to his friend, who resides in the room with his seven- and nine-year-old children. He testified

---

[2] The clerk's transcript contains an unsigned declaration by appellant "in support of rental property income." There is no file stamp on the document. We cannot consider a declaration that is not signed, not filed, and not introduced into evidence at the hearing. There is a second declaration on the same subject that is signed and was filed on November 28, 2012. Respondent complains that the declaration was not admitted as evidence at the hearing. It is entered at page 1 of the clerk's transcript but without any indication if it was submitted for this hearing or an earlier hearing. The record references earlier orders, but they are not included in the record on appeal. Since this declaration was filed some 16 months before the hearing on the most recent child support order, we cannot say it pertains to the matter before us or was considered by the trial court. We certainly cannot consider new evidence on appeal. We will discuss further appellant's burden of proof within the body of the opinion.

4

that $200 is a reasonable rental. The trial court disagreed, attributing $500 a month to appellant as the reasonable value of the rental.

In the past, appellant grew marijuana at the Chico house on Jean Lane. He testified he gave his marijuana to a collective, and in return, the collective produced "organic pain pill[s]" for him. He took the pills to alleviate the pain in his neck and lower back.

Respondent contradicted appellant's testimony. She insisted that appellant asked his sister to put her name on the title to the house, but he paid the $30,000 down payment, makes the monthly payments, and resides in the house. In respondent's view, the house belongs to appellant.

### Pension and Disability Payments

There is no factual dispute about the amount of these payments. Appellant receives $1,528 in monthly pension benefits and $2,033 in monthly disability payments.

### Unexplained Income

The trial court imputed $2,300 in unexplained income to appellant. As described above, the amount was predicated on the large monthly deposits made into appellant's commingled bank account and his failure to introduce a rental schedule identifying his expenses.

Appellant and respondent were not married. Their son spends 25 percent of his time with appellant and 75 percent with respondent. The child support order is predicated on this time-share arrangement.

## DISCUSSION

### I

### De Novo Review of Disability Income

Relying on Family Code section 17450, subdivision (c)(2) rather than Family Code section 4058, subdivision (a)(1),[3] appellant contends the trial court erroneously included his monthly Social Security disability payments as income available for the payment of child support. We agree the question posed is a question of law requiring de novo review (*Asfaw v. Woldberhan* (2007) 147 Cal.App.4th 1407, 1415 (*Asfaw*)), but we disagree with his interpretation of the pertinent statutory scheme.

The trial court relied on section 4058, which provides: "(a) The annual gross income of each parent means income from whatever source derived, except as specified in subdivision (c) and includes, but is not limited to, the following:

"(1) Income such as commissions, salaries, royalties, wages, bonuses, rents, dividends, pension, interest, trust income, annuities, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, social security benefits, and spousal support actually received from a person not a party to the proceeding to establish a child support order under this article." Subdivision (c) of section 4058 creates an exception providing that "[a]nnual gross income does not include any income derived from . . . any public assistance program, eligibility for which is based on a determination of need."

On its face, section 4058 clearly applies. Appellant receives Social Security benefits for his disability. The only exception to inclusion of Social Security benefits in the calculation of income for child support purposes is when the benefit is need based. (*Elsenheimer v. Elsenheimer* (2004) 124 Cal.App.4th 1532; *In re Marriage of Daugherty*

---

[3] All further statutory references are to the Family Code.

6

(2014) 232 Cal.App.4th 463.) Appellant testified that his application for need-based Social Security was denied because his income was too high to qualify. Thus, the Social Security disability payments appellant receives are not need based and the trial court properly included those monthly payments as income.

Appellant argues that section 17450, subdivision (c)(2) conflicts with section 4058 and should prevail. Section 17450 pertains to the collection of delinquent child support payments. It states, in pertinent part: "(b)(1) When a delinquency is submitted to the department pursuant to subdivision (c) of Section 17500, the amount of the child support delinquency shall be collected by the department in any manner authorized under state or federal law. [¶] . . . [¶]

"[(c)](2) If an obligor is disabled, meets the federal Supplemental Security Income resource test, and is receiving Supplemental Security Income/State Supplementary Payments (SSI/SSP), or, but for excess income . . . would be eligible to receive as SSI/SSP . . . then the child support delinquency shall not be referred to the department for collection, and, if referred, shall be withdrawn, rescinded, or otherwise recalled from the department by the local child support agency. The department shall not take any collection action, or if the local child support agency has already taken collection action, shall cease collection actions in the case of a disabled obligor when the delinquency is withdrawn, rescinded, or otherwise recalled by the local child support agency in accordance with the process established as described in paragraph (1)." *In re Marriage of Hopkins* (2009) 173 Cal.App.4th 281, cited by appellant, involved such a delinquency and the attempted collection of the father's child support arrearages.

This case does not involve the collection of delinquent child support and therefore section 17450 is irrelevant. Rather, the trial court properly applied the plain language of section 4058 by including appellant's Social Security benefits as part of his income available for the payment of child support. There is no conflict between the two sections and no legal error.

7

## II

### Substantial Evidence of Rental and Unexplained Income

Our review of the trial court's child support order is limited to a determination whether the trial court abused its discretion. (*Asfaw*, *supra*, 147 Cal.App.4th at p. 1414.) Factual findings, including the determination of a parent's income, will be upheld on appeal if there is substantial evidence to support them. We construe all evidence in favor of the prevailing party and will not reweigh the evidence or reexamine the trial court's assessment of credibility. (*In re Marriage of Calcaterra & Badakhsh* (2005) 132 Cal.App.4th 28, 34 (*Calcaterra & Badakhsh*).)

"The first obligation of a parent is to support his or her children." (*In re Marriage of Chakko* (2004) 115 Cal.App.4th 104, 106 (*Chakko*).) Appellant's persistent attempt to minimize child support by understating his income and underutilizing his capital and thereby skirt his responsibility to his son is not, unfortunately, precedent setting. (See, e.g., *id*. at pp. 108-109; *Calcaterra & Badakhsh*, *supra*, 132 Cal.App.4th 28; *In re Marriage of Dacumos* (1999) 76 Cal.App.4th 150 (*Dacumos*).) Nor is his failure to abide by fundamental rules of full disclosure and appellate review. The court's conclusion in *Chakko* is equally applicable here: "Father fails to appreciate the rules on appeal concerning substantial evidence and abuse of discretion. He fails to understand that the trial court did not credit his testimony. Those who interfere with the truth-seeking function of the trial court strike at the very heart of the justice system. The courts will not tolerate such interference." (*Chakko*, *supra*, 115 Cal.App.4th at p. 110.)

Respondent asserts a litany of appellant's shortcomings in these proceedings. He did not produce the requisite rental schedule whereby he should have identified both the income he received and the expenses he incurred operating his Santa Cruz rentals. His testimony was incredible. He could not explain his tax return, why his bank statements had been redacted, or why his business and personal checking accounts had been commingled. According to respondent, he lied about the ownership of the Chico house

and his involvement in the growing and selling of marijuana.  He offered an anemic excuse for his thousand-dollar-a-month reduction of rent on the King property.  On appeal, his transgressions continue.  He fails to cite to the reporter's transcript, attempts to introduce new evidence, and ignores the deferential scope of appellate review.  In sum, respondent asserts, appellant should fare no better on appeal than his counterparts in *Chakko*, *Calcaterra & Badakhsh*, and *Dacumos*.

When the father refinanced his house in *Chakko*, his loan application stated that his monthly income was $40,000.  (*Chakko*, *supra*, 115 Cal.App.4th at p. 107.)  On appeal, he asserted that the loan application did not constitute substantial evidence to uphold the child support award because he did not fill out the loan application.  (*Id*. at pp. 108-109.)  The mortgage broker testified that the application was based on the very same documents the father refused to produce in discovery.  (*Id*. at p. 109.)  The trial court drew the legitimate inference that the father's structuring of income and expenses was an attempt to minimize his support obligations.  (*Ibid*.)

Although the father in *Calcaterra & Badakhsh*, unlike the father in *Chakko* but like appellant here, provided the mother his tax returns, his testimony was also discredited.  (*Calcaterra & Badakhsh*, *supra*, 132 Cal.App.4th at p. 35.)  Simply put, the trial court did not believe him.  (*Id*. at p. 36.)  There were huge discrepancies between his tax return and various loan applications, his income and expense declaration, and his testimony.  The court wrote:  "His income and expense declaration just doesn't 'add up.' He owns a Unocal 76 gas station, two residences, and 28 apartments.  His labors and these properties allegedly produce a net income of $1,714 per month.  This declaration simply does not have the 'ring of truth.' "  (*Ibid*.)

More significantly, the father in *Calcaterra & Badakhsh*, like appellant, claimed it was unfair to use the gross rental income without deducting expenses.  (*Calcaterra & Badakhsh*, *supra*, 132 Cal.App.4th at p. 36.)  The court wrote bluntly:  "He is wrong. Any unfairness is occasioned by father's perjury. . . .  Thus, the trial court could credit

9

father's indication of gross income and disregard his indication of expenses necessary to service the properties." (*Ibid.*) The trial court used its discretion to impute income to the father based on his earning capacity. The Court of Appeal lamented, "Cases like this one are far too common." (*Id.* at p. 38.) This case is but one more example.

Perhaps the most poignant instance is *Dacumos*, *supra*, 76 Cal.App.4th 150. In *Dacumos*, the father also owned two rental properties. He claimed the expenses were higher than the rental income he received. Although the rentals were underperforming, the trial court imputed rental income based on the fair market rental value of the properties and the father's net equity in the properties. (*Id.* at p. 153.) On appeal we agreed. "Just as a parent cannot shirk his parental obligations by reducing his earning capacity through unemployment or underemployment, he cannot shirk the obligation to support his child by underutilizing income-producing assets." (*Id.* at p. 155.)

Incredibly, appellant testified he had "zero" in the way of rental income, a statement belied by his own 2012 tax return. While it is true that his return showed a tax loss, that loss was based on fictional paper losses—$31,306 as a depreciation expense and $74,739 as a tax loss carry-forward. Depreciation is " 'a mere book figure which does not either reduce the actual dollar income of the [parent] or involve an actual cash expenditure when taken. On the contrary, it represents additional cash available to the [parent] by permitting substantial tax deductions and, ultimately tax savings.' [Citation.]" (*Asfaw*, *supra*, 147 Cal.App.4th at p. 1423.) Thus, "depreciation of rental property is not deductible in calculating child support . . . ." (*Id.* at p. 1425.)

Respondent helps us with the arithmetic. The $31,306 represents a paper loss of $2,609 per month. Subtract the paper loss and appellant had positive cash receipts of $6,306, or $525 per month. He clearly did not, as he testified, have no income from his rental properties. His deceptive testimony and the conduct outlined above justified the court in rejecting his calculations and imputing income to him based on the equity he

10

owned, the income-producing potential of the properties, and, most importantly, the substantial deposits he made over a protracted period of time.

There is evidence in the record to support a finding that appellant's Santa Cruz properties have a market value approaching, if not exceeding, $1.5 million. By his own admission, appellant has in excess of $600,000 in equity. In addition, the trial court did not believe his testimony that he did not have an interest in the home in Chico, a home with a market value of at least $250,000.

In addition to his real estate assets, appellant makes substantial monthly deposits. In 2012 appellant made total deposits of $147,606.19, or $12,300.52 in monthly gross deposits. His deposits in 2013 were $126,833.05, or $10,518 per month. In April and May of 2013 alone he made deposits of $17,311. He complains the trial court did not take all of his expenses into account. As in *Chakko* and *Calcaterra & Badakhsh*, that is a problem of his own making. By redacting his bank statements and failing to submit a rental schedule, he gave the court no choice but to rely on the financial information it had and to reasonably impute income to him. We note that by imputing $2,000 in monthly income, the court impliedly found that the Santa Cruz properties generated a 1.6 percent rate of return. This reasonable rate does not constitute an abuse of discretion. (*In re Marriage of Schlafly* (2007) 149 Cal.App.4th 747, 755-756.)

Nor does the imputation of $2,300 in unexplained income. Respondent's testimony that appellant had a lucrative marijuana business in the past and his own admission to growing marijuana in Chico constitute sufficient evidence upon which the court drew adverse factual inferences that appellant continued to generate unaccounted-for income. Again, appellant had the opportunity to openly disclose all of his expenses, an opportunity he not only failed to take but went out of his way to disguise by redacting many of the expenses on his commingled bank account. His monthly deposits for over two years were in excess of $10,000, peaking at $17,311 in April and May of 2013. In

11

the absence of evidence documenting his expenses, we can find no abuse of discretion in the court's finding of $2,300 in unexplained income a month.[4]

## Attorney Fees

Appellant challenges the $5,000 attorney fee award. His own fees were in excess of $26,000, although it is unclear in the record whether he paid those fees or not. On his income and expense declaration, appellant stated he had paid his lawyer $0. "Pursuant to Family Code sections 2030 and 2032, the trial court is empowered to award fees and costs between the parties based on their relative circumstances in order to ensure parity of legal representation in the action. It is entitled to take into consideration the need for the award to enable each party to have sufficient financial resources to present his or her case adequately." (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 974-975, fn. omitted.) "If necessary, the trial court may order one party to pay the other party's 'reasonably necessary' attorney fees 'based on the income and needs assessments' of the parties." (*In re Marriage of Hofer* (2012) 208 Cal.App.4th 454, 458 (*Hofer*).) We review the award for an abuse of discretion.

In *Hofer*, despite the lack of evidence of a party's ability to pay, the court affirmed a $200,000 fee award because the party refused to comply with discovery requests. (*Hofer*, *supra*, 208 Cal.App.4th at p. 458.) Appellant, too, failed to provide unredacted bank statements. Moreover, a court may compel a paying parent to invade his capital if necessary. (*In re Marriage of Berger* (2009) 170 Cal.App.4th 1070, 1083-1084.) As discussed at length above, appellant has substantial assets and the amount of the attorney

---

[4] In a second ruling after the hearing, the trial court further found that all of appellant's income was nontaxable for purposes of calculating child support. Appellant's tax return provides substantial evidence to support this factual finding. For tax purposes, he suffered substantial losses that inured to his benefit and resulted in a zero tax liability. The court did not abuse its discretion in concluding that the amount of money he saved resulted in more income available to pay support.

12

fee award is comparatively small.  Given the size of his real property holdings and his conduct in failing to fully disclose his income and expenses, the trial court did not abuse its discretion in making such a modest award.

Respondent asks for an additional $5,000 in sanctions.  She provides little by way of legal authority and no analysis.  We cannot say the appeal was totally without merit, and in the absence of a cogent argument to the contrary, we must deny the request.

## DISPOSITION

The judgment is affirmed.  Respondent is awarded costs on appeal.

RAYE , P. J.

We concur:

BLEASE , J.

MAURO , J.