Filed 8/25/15  Marriage of Vahidi and Abrishami CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of PANTEA VAHIDI and ALI ABRISHAMI. | D065176 |
| PANTEA VAHIDI, | |
| Respondent, | (Super. Ct. No. D533409) |
| v. | |
| ALI ABRISHAMI, | |
| Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Robert C. Longstreth, Judge.  Affirmed in part, dismissed in part.

Law Offices of Sondra S. Sutherland, Sondra S. Sutherland and Bill Parks for Appellant.

Stephen Temko and Dennis Temko for Respondent.

INTRODUCTION

Ali Abrishami (husband) appeals from an order awarding Pantea Vahidi (wife) temporary child and spousal support, contending the trial court abused its discretion in multiple respects.  We are not persuaded by these contentions and affirm the order.

Husband also appeals from an order denying his motion for reconsideration.  As a motion for reconsideration is not appealable, we dismiss husband's appeal as to this order.

BACKGROUND

Husband and wife were married in 2001.  For most of their marriage they resided in Iran.  They separated in 2011, by which time they were residing in the United States.  Shortly after their separation, wife petitioned for dissolution of their marriage.

Wife subsequently filed a request for order seeking temporary child and spousal support.  For child support, wife requested an amount based on the child support guideline formula or, alternatively, an amount "commensurate with [the] historical standard of living from [the] date of separation."  For spousal support, wife requested an amount "[p]er standard of living."

The trial court conducted an evidentiary hearing on the matter, which spanned several days over two months.  During the hearing, both husband and wife presented evidence of their preseparation income, assets, and lifestyle.  Among the evidence, wife's most recent income and expense declaration stated she had monthly investment income of $2,600 and monthly expenses and/or proposed needs for her and the parties' three children of $20,827.  As to the parties' assets, the declaration stated she did not have "clear knowledge of the nature and extent of our marital assets" in part because husband

2

had obtained a "power of attorney from me in Iran and could have readily transferred and/or transmuted our marital assets without my knowledge." Nonetheless, based on the parties' lifestyle in Iran and in the United States while married, she believed "(i) our marital assets must be in the millions; [and] (ii) [husband] has and continues to derive significant income from our income-earning martial assets in Iran."

In addition, wife testified husband had numerous business interests in Iran. They also owned numerous valuable properties in Iran, some income producing. The properties were not necessarily titled in either of the parties' names. Sometimes they were titled in the names of their children or other family members for whom husband held power of attorney.

Although wife did not know husband's exact monthly income, husband had several bank accounts and she regularly had access to money in one of their joint accounts, which had fluctuating balances of between $200,000 and $2 million. On average, she withdrew $5,000 per week from the account to pay for certain household and personal items, including groceries, a housekeeper, a nanny, clothing, and activities. Husband paid the parties' other expenses, including utility bills and their children's private school tuition.

The parties frequently traveled internationally, flying business class and staying in luxurious hotels. When they visited the United States before moving here, they brought at least $10,000 and sometimes as much as $50,000 with them for spending money. When they moved to the United States, they brought several million dollars with them, which they spent on homes, investments, vacations, shopping sprees, and dining.

Husband disputed most of wife's evidence. His most recent income and expense declaration stated he had no monthly income; self-employment income of $6,900 for 2012-2013; assets totaling $3,500; proposed monthly expenses totaling $11,135; and debts of almost $340,000, exclusive of attorney fees.

He testified he no longer had significant business interests in Iran, and his prior business interests had not been profitable since 2010. His income in Iran in 2011 was approximately $51,000. He lost money in 2010 and he could not estimate his income for any year between 2006 to 2009.

In addition, he testified the properties wife referenced in her testimony never produced income and/or never actually belonged to them, even though they may have been titled in his, hers, or their children's names. He explained the properties actually belonged to creditors of the City of Tehran (City) who contracted with him to facilitate the satisfaction of their monetary claims against the City. Essentially, he acted as an intermediary between the City's creditors and debtors, allowing the debtors to satisfy the creditors' claims through exchanges of property and promises to pay without the City's involvement. The creditors had him hold the exchanged property in his name or his children's name for tax purposes.[1]

---

[1] Husband produced the contract, which was entered into in October 2007 (2007 contract), for the first time in the midst of the hearing. Although he testified it had been amended many times, he did not produce any of the amendments. Wife testified she had never heard of the contract before husband produced it.

Husband further admitted that after wife petitioned for dissolution of their marriage, he used a previously obtained irrevocable power of attorney to transfer nominal title of four properties from wife to himself and others. He said he did this to protect both of them by ensuring the properties remain available to satisfy the creditors' claims under the 2007 contract.[2]

Finally, he testified the parties' living expenses in Iran were modest. Nonetheless, he acknowledged they took more than 30 trips throughout the world during their marriage and, in 2011 and 2012, they had spent money on cosmetic procedures and expensive sunglasses. He also acknowledged he and wife transferred several million dollars to the United States during their marriage. According to him, about half of the money was his separate property and the other half came from properties he sold in Iran between 2001 and 2007. About half the money was used to purchase real property in the United States, approximately $525,000 was transferred to a client trust account, and he did not know where the remainder of the money was.

In rebuttal, one of wife's extended family members testified that, after wife filed this action, husband said he was going to offer wife $15,000 a month as support for her and their children. He planned to generate the money by purchasing rental properties in

---

[2] Husband also admitted using the irrevocable power of attorney to revoke another revocable power of attorney wife gave her father to obtain documents on her behalf. He stated he did this because he did not believe what she was asking her father to do was in the family's interest.

the United States. He said he was a rich man and had a lot of money in Iran to purchase the properties.

At the conclusion of the hearing, the court awarded wife temporary monthly child support of $15,173 and temporary monthly spousal support of $17,500. The court made the award retroactive to the date wife filed her request for order, resulting in child support arrears of $166,903 and spousal support arrears of $192,500.

The court based the award amounts on a finding husband had imputed monthly income of $61,000 from community assets in Iran he solely controlled. Although the court did not specifically identify the community assets, the court determined the assets existed from provisions in the 2007 contract stating husband guaranteed the creditors' claims and secured the guarantee with "valid checks, promissory notes and properties for 1.5 times" the amount of the claims, or approximately $37 million.[3]

The court further determined the assets existed from evidence the parties had lived a lavish lifestyle in Iran and had transferred several million dollars from Iran to the United States during their marriage. For purposes of determining how much income to impute from the assets, the court assumed the assets earned or could earn husband at least a 2 percent annual rate of return.

---

[3]    The 2007 contract specifically stated the investors accepted five checks, a promissory note, a bill of sale for a tract of land, and the title deed for an apartment as security for the guarantee. However, the contract also stated the amount of the security was insufficient and husband was obliged to provide additional security. Husband testified he later added "a few other properties" as security. The value of the contract and the security was based on a currency exchange rate elicited by husband's counsel from husband at the hearing.

Husband requested a statement of decision and the court directed husband's counsel to prepare one. Husband submitted a proposed statement of decision, to which wife objected. She submitted her own proposed statement of decision, to which husband objected. The court ultimately denied husband's request for a statement of decision, finding a statement of decision was not required for motion hearings. The court also noted husband's request was deficient because it did not specify the issues to which the statement of decision should be directed, and husband's proposed statement of decision was deficient because it did not fairly and accurately set forth the court's findings of fact.

Husband subsequently filed a motion for reconsideration. The court denied the motion stating, "The motion simply attempts to reargue matters that were argued and addressed at length at the hearing on this matter. There are no facts or arguments that were not presented at the hearing or that could not have been presented at the hearing. In addition, according to the declaration of [husband's counsel] [husband's] motion for reconsideration should have been filed by December 10, 2013. It was filed Dec[ember] 11, 2013 and is untimely."

## DISCUSSION

### I

### *Support Award*

### A

"During the pendency of any proceeding for dissolution of marriage …, the court may order (a) either spouse to pay any amount that is necessary for the support of the other spouse …, or (b) either or both parents to pay any amount necessary for the support

7

of the child, as the case may be." (Fam. Code, § 3600.)[4] We review a court's support order for abuse of discretion. (*In re Marriage of McHugh* (2014) 231 Cal.App.4th 1238, 1247; *In re Marriage of Schlafly* (2007) 149 Cal.App.4th 747, 753; *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 282-283.) "We determine 'whether the court's factual determinations are supported by substantial evidence and whether the court acted reasonably in exercising its discretion.' [Citation.] We do not substitute our own judgment for that of the trial court, but determine only if any judge reasonably could have made such an order." (*In re Marriage of Schlafly*, *supra*, at p. 753.)

In determining child and spousal support, a court has the discretion to consider a party's earning capacity. For child support purposes, the consideration of a party's earning capacity must be in the best interest of the children. (§§ 4058, subd. (b), 4320, subds. (a) & (c); *In re Marriage of Cheriton*, *supra*, 92 Cal.App.4th at pp. 301, 308; *In re Marriage of Cohn* (1998) 65 Cal.App.4th 923, 927; *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 642.) "Earning capacity" may include income derivable from income-producing assets. (*In re Marriage of Cheriton*, at pp. 304-305; *In re Marriage of Dacumos* (1999) 76 Cal.App.4th 150, 155; see *In re Marriage of Wittgrove* (2004) 120 Cal.App.4th 1317, 1327 [for spousal support purposes, "ability to pay" includes the use of income from investments and other assets].) "Earning capacity" may also include income imputed from underutilized or non-income-producing assets based on an assumed

---

4       Further statutory references are to the Family Code unless otherwise specified.

8

reasonable rate of return.  (*In re Marriage of Williams* (2007) 150 Cal.App.4th 1221, 1239.)

B

1

Husband contends the court abused its discretion in imputing income to him based on the 2007 contract's guarantee and security provisions because the court did not specifically identify the assets referenced in the provisions, there is no evidence husband actually had $37 million in assets when he signed the 2007 contract, and there is no evidence he currently has $37 million in assets.  We are not persuaded by any of these points.

Husband cites no authority mandating the court specify the assets underlying the contract's guarantee and security provisions and, for purposes of our review, we need only determine whether there is substantial evidence the assets exist.  (*In re Marriage of Schlafly*, *supra*, 149 Cal.App.4th at p. 753.)  Of course, the 2007 contract guarantee and security provisions themselves provide such evidence.  In addition, the 2007 contract identifies at least some of the securing assets and husband testified there were other securing assets beyond those identified in the contract itself (see fn. 3, *ante*).  Thus, there is sufficient evidence the securing assets exist.

There is also sufficient evidence the securing assets were worth at least $37 million at the time of the hearing.  Husband produced the 2007 contract as evidence bearing on his current financial status (see fn. 1, *ante*).  The 2007 contract expressly required him to secure his performance with assets worth 1.5 times the value of the

9

creditor's claims. Husband affirmed this contractual requirement at the hearing. He also supplied the exchange rate the court utilized to determine the amount of securing assets the 2007 contract required him to have (see fns. 1 & 3, *ante*).

Although husband testified he no longer had substantial income or assets in Iran and that the parties to the 2007 contract actually owned and controlled the Iranian real estate held in his name and his children's names, the court implicitly found this testimony incredible. As the court pointed out, it is inconceivable the parties to the 2007 contract would entrust husband to handle millions of dollars of transactions on their behalf without appropriate assurance husband was able to fulfill his financial obligations to them. In addition, in 2009, husband and wife jointly created a list of real estate holdings and they never indicated any of properties on their list were wholly or partially owned by others. The parties' lavish lifestyle in Iran, their transfer of millions of dollars to the United States, and husband's postseparation representation he had sufficient wealth in Iran to pay wife at least $15,000 a month also belie husband's claims of minimal income and assets. Moreover, husband severely undermined his own credibility about the parties' financial affairs when he readily, if not proudly, admitted he had used a previously obtained irrevocable power of attorney to block wife's efforts to obtain Iranian documents supporting her case and to violate a court order by transferring Iranian assets out of her name.

2

Husband next contends that, even if he had $37 million in assets in Iran, there is no evidence the assets had the ability to produce sufficient income to satisfy his support

10

obligation.  Although there was evidence in the form of wife's testimony that at least some of the parties' real estate assets produced substantial monthly income, the court was not required to find any of the assets were able to produce income in order to impute income to the assets.  "[I]t is now well established that 'where the supporting party has chosen to invest his or her funds in non-income-producing assets, the trial court has discretion to impute income to those assets based on an assumed reasonable rate of return.' "  (*In re Marriage of Williams*, *supra*, 150 Cal.App.4th at p. 1239.)

3

Husband relatedly contends there is insufficient evidence an assumed 2 percent rate of return is reasonable for assets located in Iran.  Recognizing many of the parties' assets consisted of real estate holdings, the court considered an imputed 2 percent rate of return to be, in its experience, both reasonable and very conservative.  A rate of return estimated based on common knowledge and common sense is supported by substantial evidence.  (*In re Marriage of Schlafly*, *supra*, 149 Cal.App.4th at p. 756.)

4

Husband further complains the court should not have ordered him to pay child and spousal support based on income imputed to Iranian assets because he cannot legally transfer money from Iran to the United States.  However, the court's support order does not require husband to transfer money from Iran to the United States.  At wife's request, the court ordered husband to deposit the monthly support payments into a "bank account in Iran designated by [wife]," leaving to her, not him, the task of determining how to appropriately access the money in the United States.

11

Husband also complains the court abused its discretion by imputing income to him without first finding doing so was in the children's best interest. (§ 4058, subd. (b); *In re Marriage of Mosley* (2008) 165 Cal.App.4th 1375, 1389-1390 [a court must consider the best interest of the children in determining whether to impute income to a parent for child support purposes].) However, absent a statement of decision, "the reviewing court presumes that the trial court made all factual findings necessary to support the judgment and reviews those implied findings under the substantial evidence rule." (*In re Marriage of Fong* (2011) 193 Cal.App.4th 278, 293; *Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 58 [under the doctrine of implied findings an appellate court must infer all factual findings necessary to support the judgment].) In this case, there is substantial evidence imputing income to husband is in the children's best interest because imputing income to him increased their overall monetary support.

Implicitly recognizing the weakness of his preceding argument, husband next contends the court committed reversible error per se by refusing to grant his request for a statement of decision. We disagree.

"Code of Civil Procedure section 632 requires the trial court to issue a statement of decision 'upon the trial of a question of fact' when it receives a request therefor by a party appearing at trial. In general, however, section 632 applies when there has been a trial followed by a judgment. [Citation.] It does not apply to an order on a motion. [Citation.] This is true even if the motion involves an evidentiary hearing and the order is

appealable." (*In re Marriage of Askmo* (2000) 85 Cal.App.4th 1032, 1040; accord, *In re Marriage of Fong*, *supra*, 193 Cal.App.4th at p. 294.) Since the proceeding on wife's request for order "was not a trial and was not followed by a judgment, under the general rule, the trial court was not required to issue a statement of decision." (*In re Marriage of Askmo*, *supra*, at p. 1040.) A statement of decision is also not required as an exception to the general rule "since the trial court's determination involves only a temporary entitlement to funds and a limited evidentiary hearing, which can be reviewed even in the absence of a statement of decision." (*Ibid.*; *In re Marriage of Fong*, at pp. 295-297.)

7

Husband next contends the court's child and spousal support awards constitute an abuse of discretion because the amount of the awards exceed the children's and wife's reasonable needs. We discern no such abuse.

The court determined the amount of the child support award by utilizing the statewide uniform guideline, to which the court was required to adhere absent statutory special circumstances (§ 4052) not alleged here. The guideline amount is presumptively correct and husband has not rebutted the presumption, as he had not identified any evidence establishing application of the guideline would be unjust or inappropriate and a lower award would be consistent with the children's best interest. (*In re Marriage of Wittgrove*, *supra*, 120 Cal.App.4th at pp. 1326, 1328.) "Furthermore, '[w]hat constitutes reasonable needs for a child varies with the circumstances of the parties [and] the duty to support a child covers more than the mere necessities of life if the parent can afford to pay more.'" (*Id.* at p. 1329.)

13

The amount of the court's spousal support award ($17,500) is actually below the guideline amount ($19,235). The court awarded the lower amount after considering the stage of the litigation and wife's expenses, indicating the court did, in fact, consider wife's reasonable needs. Moreover, as with child support, the court may consider the parties prior lifestyle in setting the amount of temporary spousal support as the benchmark for temporary spousal support is maintaining the status quo. (*In re Marriage of Wittgrove*, *supra*, 120 Cal.App.4th at pp. 1328-1329.)

8

Finally, husband contends the court abused its discretion in making the child and spousal support awards retroactive. In exercising its discretion to make a temporary support award retroactive, a court must consider the supported party's needs and the supporting party's ability to pay. (*In re Marriage of Cheriton*, *supra*, 92 Cal.App.4th at pp. 300, 312-313.)

Here, husband's arguments against making the support awards retroactive are based entirely on his version of the parties' respective financial conditions. As previously discussed, the court implicitly found his version incredible and there is substantial evidence to support the court's finding. Accordingly, husband has not established the court abused its discretion in making the support awards retroactive.

II

*Motion for Reconsideration*

Husband contends the court abused its discretion and deprived him of due process by denying his motion for reconsideration without a hearing on the merits. We decline to

14

address this contention because an order denying a motion for reconsideration is not an appealable order.  (*Tate v. Wilburn* (2010) 184 Cal.App.4th 150, 158-160; *Annette F. v. Sharon S.* (2005) 130 Cal.App.4th 1448, 1458-1459.)

DISPOSITION

The appeal of the December 11, 2013, order denying husband's motion for reconsideration is dismissed.  The order of November 18, 2013, awarding wife temporary child and spousal support is affirmed.  The stay of contempt proceedings issued March 11, 2015, is vacated.  Wife is awarded her costs on appeal.


MCCONNELL, P. J.

WE CONCUR:


BENKE, J.


PRAGER, J.[*]

---

[*]    Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.