Filed 10/17/22  Marriage of Valen CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re Marriage of KELLY VALEN and STEPHEN VALEN. | |
| KELLY B. VALEN, Appellant, v. STEPHEN J. VALEN, Respondent. | A164029 (Marin County Super. Ct. No. FL2101058) |

Appellant Kelly B. Valen appeals from an order declining to increase the amount she is owed for temporary spousal support from her former spouse, respondent Stephen J. Valen.  Kelly argues that the family court abused its discretion because in calculating the amount of support it did not impute to Stephen the value of his housing, which is provided to him without charge by his employer, the United States Department of State.[1]  We affirm.

---

[1] For clarity, we refer to the parties by their first names.  (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 817, fn. 1.)

1

## FACTUAL AND PROCEDURAL BACKGROUND

The parties were married in September 1993, and had been married for 26 years when they separated in late 2019. Stephen petitioned for divorce in March 2021.

Both parties are members of the State Bar of California, and early in their marriage they worked as attorneys. They have four adult children. At the time Stephen filed for dissolution, the children were 25, 24, and 21 years old (the youngest are twins). In 2003, Kelly left the practice of law to become a full-time homemaker. She also published a book in 2010, for which she received $175,000. Since 2009, Stephen has been employed by the United States Department of State as a commissioned officer of the Foreign Service. He has been assigned to various diplomatic postings abroad, and the family has lived in Bangkok, Vancouver, and Paris. Stephen also completed unaccompanied year-long assignments in Afghanistan and Pakistan.

After Stephen was assigned to Pakistan in 2018, Kelly moved to a one-bedroom apartment in Mill Valley that she sublet from her sister and brother-in-law. Reportedly, the monthly rent is $1063.[2] She occasionally hosts the parties' adult children. Since moving to Mill Valley, she has yet to secure employment.

Stephen's most recent posting was to Bogota, Colombia, where he lived in an apartment assigned to him by the Department of State.[3] According to Stephen, personnel who are posted in Colombia are required to accept assigned housing, which is provided to them at no charge. Stephen stated he

---

[2] Kelly characterizes this amount as "unusual below-market rent."

[3] Stephen indicated he was to be reassigned to Washington D.C. in August 2022.

2

has not received a monetary housing allowance since 2015, when he was posted to Vancouver.

In July 2021, Kelly filed a request seeking, among other things, an order requiring Stephen to pay guideline temporary spousal support with an "upward deviation" for a total of $4,840 per month. She claimed that Stephen's monthly salary was $12,099. In seeking increased support, she emphasized that Stephen was living in a large apartment in Bogota supplied to him by the government free of charge. She asserted that the value of his housing should be imputed to him as income for purposes of calculating support.[4]

The parties' income and expense declarations show that the only source of income available since the time of separation in 2019 has been Stephen's salary. Stephen disclosed that he currently has no rent or mortgage expenses. In support of his disclosure, he attached his federal earnings statements.

After reviewing the parties' financial disclosures and supporting documents, as well as Kelly's extensive moving papers, the family court declined to order enhanced spousal support, instead ordering Stephen to pay Kelly guideline temporary spousal support of $3,489 per month based on the court's DissoMaster calculation.[5]

The family court's order was entered on September 1, 2021. It requires Stephen to pay $3,489 in spousal support per month "continuing until either

---

[4] On appeal, Kelly represents that the value attributable to Stephen's housing is $58,700 per year.

[5] "DissoMaster is a computer software program widely used by courts to set child support and temporary spousal support." (*Namikas v. Miller* (2014) 225 Cal.App.4th 1574, 1578, fn. 4.)

Party's death, wife's remarriage, settlement, trial, or further order of the Court, whichever shall occur first." Kelly timely moved for reconsideration of the order, and her motion was denied on October 27, 2021. At the hearing on the motion for reconsideration, the court explained that there was no law requiring it to "add as income available for support a non-monetary benefit received by an employee," especially in the context of spousal support. This appeal followed.

## DISCUSSION

### A. Kelly's Contentions

Kelly asserts that the family court erred in declining to impute the value of Stephen's employer-provided housing to him as income for purposes of calculating temporary spousal support. She further contends that the court improperly categorized his housing as an expense, rather than as income. Finally, she claims the court's order is unsupported by substantial evidence because Stephen failed to fully comply with disclosure rules with respect to the value of his Bogota living arrangement. We are persuaded by none of these arguments.

### B. Applicable Law and Standard of Review

Temporary spousal support is governed by Family Code section 3600,[6] which states, in pertinent part, that "[d]uring the pendency of any proceeding for dissolution of marriage . . ., the court may order . . . either spouse to pay any amount that is necessary for the support of the other spouse." (§ 3600.) "Awards of temporary spousal support rest within the broad discretion of the trial court and may be ordered in 'any amount' [citation] subject only to the moving party's needs and the other party's ability to pay. [Citation.] Permanent support, by contrast, is constrained by numerous statutory factors

---

[6] All undesignated statutory references are to the Family Code.

4

set out in section 4320." (*In re Marriage of Murray* (2002) 101 Cal.App.4th 581, 594, disapproved on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.)

" ' "Whereas permanent spousal support 'provide[s] financial assistance, if appropriate, as determined by the financial circumstances of the parties after their dissolution and the division of their community property,' temporary spousal support 'is utilized to maintain the living conditions and standards of the parties in as close to the status quo position as possible pending trial and the division of their assets and obligations.' [Citations.]" [Citation.] The court is not restricted by any set of statutory guidelines in fixing a temporary spousal support amount.' " (*In re Marriage of Samson* (2011) 197 Cal.App.4th 23, 29.) "Rather, in exercising its broad discretion, the court may properly consider the 'big picture' concerning the parties' assets and income available for support in light of the marriage standard of living." (*In re Marriage of Wittgrove* (2004) 120 Cal.App.4th 1317, 1327 (*Wittgrove*).) Whether to impute income to the supporting spouse is necessarily a part of that exercise of the court's broad discretion in determining an appropriate amount of support. (*In re Marriage of Sorge* (2012) 202 Cal.App.4th 626, 642-643; *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 301; *In re Marriage of Schlafly* (2007) 149 Cal.App.4th 747, 753 (*Schlafly*).)

Although no explicit statutory standards govern the calculation of temporary spousal support, the family court may properly use "local rules or guidelines that provide 'standardized temporary spousal support schedules' that mark appropriate awards for spousal support based solely on the parties' incomes with adjustments for any child support." (*Wittgrove, supra,* 120 Cal.App.4th at p. 1327.) Former Marin County Superior Court Local

5

Family Rules, rule 6.14 (now rule 7.14)[7] provides the following guideline: "In cases where the recipient of spousal support is not receiving child support from the same payor, the presumed temporary spousal support will be 40% of the net income of the payor less 50% of the net income of the payee." (Rule 7.14 (B)(1).)

The standard of review that applies to an order for temporary spousal support is abuse of discretion. (*Wittgrove, supra,* 120 Cal.App.4th at p. 1327.) "Subject only to the general 'need' and 'the ability to pay,' the amount of a temporary spousal support award lies within the court's sound discretion, which will only be reversed on appeal on a showing of clear abuse of discretion." (*Ibid.*) As one appellate court explained, " 'The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.' " (*In re Marriage of Walker* (2012) 203 Cal.App.4th 137, 146.)

## C. The Family Court Did Not Misapply the Law

Kelly contends that the family court abused its discretion by failing to consider the law and evidence that she provided below regarding whether Stephen's free housing should be imputed to him as income in the court's DissoMaster calculation. But her legal argument relies almost exclusively on section 4058, subdivision (a)(3) and related cases that address the rules regarding imputing employer-provided housing in the context of *child*

---

[7] All undesignated rule references are to the Marin County Superior Court Local Family Rules.

support, not *spousal* support.  Because this case does not involve child support, her arguments are unconvincing.

Section 4058 is part of the legislation that established California's uniform child support guidelines.  Section 4050 states: "In adopting the statewide uniform guideline provided in this article, it is the intention of the Legislature to ensure that this state remains in compliance with federal regulations for *child support* guidelines."  (Italics added.)  In this context, section 4058, subdivision (a) defines "[t]he annual gross income of each *parent*."  (Italics added.)  Subdivision (a)(3) defines gross income as including "[i]n the discretion of the court, employee benefits or self-employment benefits, taking into consideration the benefit to the employee, any corresponding reduction in living expenses, and other relevant facts."

Although Kelly argues that section 4058 broadly applies to income determination in all divorce proceedings, by its terms, the statute has no direct application to temporary spousal support, which, as noted above, is provided for under section 3600.  Likewise, the cases Kelly principally relies on, *In re Marriage of Schulze* (1997) 60 Cal.App.4th 519 (*Schulze*) and *In re Marriage of Loh* (2001) 93 Cal.App.4th 325 (*Loh*), are of questionable relevance as neither case concerns temporary spousal support.

In *Schulze,* the appellant challenged an award of child support and permanent spousal support that took more than 83 percent of his after-tax monthly monetary income.  (*Id.* at p. 522.)  In part, the appellant asserted that the family court erred in including as income a $600 rent reduction that he received from his parents, who were also his employers.  (*Id.* at p. 528.)  The appellate court held that the imputation of rent could be classified as employment compensation for purposes of calculating *child support* under section 4058, subdivision (a)(3).  (*Ibid.*)

Similarly, in *Loh, supra,* the appellant appealed from a child support modification order.[8] (*Id.* at p. 329.) In that case, the obligee mother sought an increase in child support based on evidence of the father's "lifestyle" which was allegedly subsidized by his girlfriend. (*Id.* at p. 327.) The appellate court concluded the trial court erred in finding the father's income was greater than what the evidence established, and in departing from a calculation based on the income reported in the father's tax returns. (*Id.* at p. 333.) The court further considered how the trial court should proceed when significant nontaxable benefits are involved, such as when a parent has free housing: "[T]he proper course was to first calculate the guideline amount in light of the parents' incomes as revealed by such evidence as tax returns, income and expense declarations and pay stubs, and then, under section 4057,[9] to adjust the amount upward in light of the free housing benefit. Such an approach respects the rebuttable correctness of the mechanically calculated guideline amount, and allows child support awards to properly reflect the parents' standard of living without doing violence to the word 'income' in a way that

_____

[8] In her reply brief, Kelly stresses that *Loh* did not expressly limit its analysis to the child support context. However, the facts of the case involved neither permanent nor temporary spousal support. Thus, the opinion does not provide support for applying section 4058, subdivision (a)(3) in the context of temporary spousal support. "It is axiomatic that an opinion does not stand for a proposition the court did not consider." (*People v. Taylor* (2010) 48 Cal.4th 574, 626.)

[9] Under section 4057, subdivision (b), the family court has discretion to find special circumstances other than the statutory ones which would make application of the guideline child support formula unjust or inappropriate. (See *Schlafly, supra,* 149 Cal.App.4th at pp. 758–759 [augmentation of child support guideline to account for father's mortgage-free housing as a special circumstances was permissible under section 4057, subdivision (b)(5)(B)].)

would make the Sheriff of Nottingham proud." (*Loh, supra,* 93 Cal.App.4th at pp. 335–336.)

Kelly does not cite to any cases suggesting that the guidelines contained in section 4058 apply in the context of temporary spousal support, nor has our researched disclosed any such cases. Rather, the cases support the contrary view.

For example, in *In re Marriage of Blazer* (2009) 176 Cal.App.4th 1438 (*Blazer*), the wife appealed from an order modifying temporary spousal support and awarding permanent spousal support. (*Id.* at p. 1440.) She argued that the family court erred in excluding from the husband's income certain business investments, which had the overall effect of lowering his income. (*Id.* at pp. 1440–1441.) In upholding the lower court's ruling, the appellate court observed: "The spousal support statute does not define income. 'There are no statutes that address the computation of income for the purpose of determining spousal support.' [Citation.] [¶] This is in contrast to the statutory provisions governing child support. As one commentator notes, 'there is not yet any authority' applying the child support definition to spousal support." (*Id.* at p. 1445, fn. omitted.) Notwithstanding this conclusion, *Blazer* elected to analyze the case under section 4058, subdivision (a)(2)'s income exclusion for " 'expenditures required for the operation of the business,' " but only after noting that both parties had raised section 4058 without discussing whether the provision had any application to spousal support awards. (*Id.* at p. 1448.)

In a footnote, *Blazer* pointed out that cases uniformly treat income differently with respect to child support and spousal support, even though at least one family law treatise has suggested that income should be treated the same in both contexts: "Child support and spousal support serve different

9

purposes, implicate different policies, and are governed by different rules. (Compare § 4053, subd. (e) [concerning child support, the legislative policy is to treat 'the interests of children as the state's top priority'] with § 4320, subd. (l) [concerning spousal support, the legislative policy is for the supported spouse to become 'self-supporting within a reasonable period of time']; compare § 4052 [for child support, 'court shall adhere to the statewide uniform guideline'] with § 4320, subd. (n) [for spousal support, court shall consider enumerated circumstances including 'other factors the court determines are just and equitable']; see also, e.g., *In re Marriage of Pendleton & Fireman* (2000) 24 Cal.4th 39, 49 [public policy prohibits waiver of child support but not spousal support]; *In re Marriage of Lynn* (2002) 101 Cal.App.4th 120, 130, fn. 7 [same]; *In re Marriage of Cheriton, supra,* 92 Cal.App.4th at p. 308 [when imputing income to the payee spouse, child support order must 'consider the children's best interests' but no such requirement applies to spousal support order]; *In re Marriage of Kerr* (1999) 77 Cal.App.4th 87, 95–96 ['child support awards must reflect a minor child's right to be maintained in a lifestyle and condition consonant with his or her parents' position in society after dissolution of the marriage' while spousal support orders require 'consideration of the parties' standard of living during marriage' only]; *In re Marriage of Schulze, supra,* 60 Cal.App.4th at pp. 528, 527 [guideline child support is highly regulated and 'relatively fixed' whereas permanent spousal support orders must be 'the product of a truly independent exercise of judicial discretion']; but see [2] Kirkland et al., Cal. Family Law: Practice and Procedure, [(2009) Spousal Support Orders], § 51.33, p. 51-31 [considering it 'reasonable that the same rules' defining income for child support purposes 'would apply to spousal support'].)" (*Blazer, supra,* 176 Cal.App.4th at p. 1446, fn. 3.) We follow the weight of

10

authority and conclude that family courts are not governed by section 4058 when determining temporary spousal support, particularly in cases such as this where child support is not at issue.

Kelly also faults the family court's observation that Stephen's housing cannot be alienated, contending that "there is no statutory or case law support for [the] argument . . . that employer provided 'free housing' must be 'monetized into cash' to be included as income for temporary spousal support." On appeal, however, it is her burden to supply this court with authority supporting her position that the family court is *required* to determine the cash value of employer-provided housing *and* impute this value to the supporting spouse when determining temporary spousal support. Significantly, as noted above, it is well-settled that the family court is not restricted by *any* set of statutory guidelines in fixing a temporary spousal support amount. (See *Wittgrove, supra,* 120 Cal.App.4th at p. 1327.)

Kelly also relies on cases involving support awards for military families who receive government-subsidized housing, such as *In re Marriage of Stanton* (2010) 190 Cal.App.4th 547. In *Stanton,* the father was a member of the United States Navy. In calculating temporary child and spousal support, the family court included in his gross income his nontaxable military allowances (basic allowances for housing and subsistence) which he received in cash as part of his paycheck.[10] (*Id*. at p. 552.) The central contention on appeal was whether Congress intended to disallow a state court's inclusion of such military allowances as part of a party's gross income for purposes of

_____

[10] We observe that Kelly admits there is no evidence that Stephen's housing can be monetized into cash to pay her support. Nor does she contest that Stephen was required to live in his assigned apartment while serving in Bogota.

11

family support since, under federal law, such allowances are not taxable or subject to wage garnishment. (*Id*. at p. 551.) *Stanton* concluded that federal preemption was inapplicable to military allowances, and that such allowances could be included as income. (*Id*. at p. 560.) The case does not hold that a family court is *required* to impute the value of free housing as income to a supporting spouse when determining temporary spousal support under section 3600.

In her reply brief, Kelly asserts that section 4058 is not limited to child support calculations because section 2101, subdivision (c) recognizes that a working spouse must disclose "income from whatever source derived, *as provided in section 4058*" when filing disclosure statements in dissolution proceedings. (Italics added.) She contends that this disclosure requirement makes section 4058 applicable to both child and spousal support awards. She also emphasizes that the DissoMaster is used to determine guideline income for both child support and temporary spousal support awards, and that rule 7.13(b)(2) requires parties to disclose all "in kind" income as part of their preliminary financial disclosures, without reference to whether child or spousal support is at issue. But while it is true that a party is required to disclose all pertinent sources of income in divorce actions, it does not necessarily follow that the family court is required to include the same sources of income in calculating temporary spousal support as it would in calculating child support.

Here, the parties have no minor children and child support is not at issue. Because section 4058, subdivision (a)(3) has no direct application to this case, and because Kelly does not cite to any case holding that temporary spousal support determinations are governed by that subdivision, we conclude Kelly has failed to demonstrate that the family court erred in failing

12

to impute the monetary value of Stephen's free housing as income for purposes of calculating temporary spousal support.[11]

## D. Designating Free Housing as an "Expense" or "Income"

Kelly argues that the family court erred in concluding that Stephen's free housing could not be including in calculating temporary spousal support because it was an expense, not income. But, to be clear, the court's conclusion did not cause the court to reduce Stephen's income, it merely lead the court to set his housing expenses at zero when it ran the DissoMaster. In making her argument, Kelly again relies on section 4058, subdivision (a)(3) for the proposition that free employer housing can be considered "imputed income." Because the court was not required by this statute to impute the value of Stephen's housing as income to him in calculating temporary spousal support, it did not err in categorizing his housing as a zero expense, rather than as a positive source of income.

## E. Substantial Evidence

Lastly, Kelly contends that the family court' ruling was not based on substantial evidence because the court failed to require Stephen to comply with his financial disclosure obligations. She argues that Stephen was required under rule 7.13(B)(2) to provide all relevant facts related to any "in-kind" employment benefit when he submitted his income and expense

---

[11] In so concluding, we do not suggest that family courts are precluded from considering employer-provided housing as income for purposes of calculating temporary spousal support. Where there are "unusual facts or circumstances," the family court has the discretion to apply local spousal support guidelines "as modified by such facts or circumstances." (*In re Marriage of Burlini* (1983) 143 Cal.App.3d 65, 70.)

declaration, including the valuation of his housing benefit, which she asserts is available from the State Department.

Each party to a proceeding for dissolution of marriage or legal separation is required to fully disclose in the early stages of the proceeding all assets and liabilities in which he or she may have an interest, whether community or separate, and must fully disclose his or her income and expenses. (§ 2100, subd. (c).)  In addition, each party has a continuing duty to augment those disclosures immediately and fully upon any material change. (*Ibid*.)  These disclosure duties are declared by statute to be fiduciary in nature.  (§§ 2102, subds. (a) & (c), 721, subd. (b); see also § 1100, subd. (e).)

We need not consider whether Stephen violated his disclosure obligations as we have already concluded that the family court was not required to consider his government housing as imputed income for purposes of calculating temporary spousal support.[12]  Moreover, to the extent Kelly urges that remand is necessary at this stage to ensure Stephen's full compliance with rule 7.13(B)(2), we observe that the issue is forfeited as she did not move to compel disclosure below.  While the Family Code provides an "expedited discovery scheme," (*Loh, supra,* 93 Cal.App.4th at p. 330), "the Legislature did not obviate the traditional requirements of civil practice that discovery requests must be enforced."  (*Ibid*.)  If a party fails to produce required documents, the other party may compel production in the manner specified in the Civil Discovery Act, i.e., by moving to compel production and seeking monetary, evidentiary or issue sanctions.  (§ 3666; see Code Civ.

---

[12] Kelly's February 22, 2022 request for judicial notice of Department of State documents pertaining to Living Quarters Allowances for its employees is denied as unnecessary to our decision.

14

Proc., §§ 2031.300 [motion to compel response], 2031.310, subds. (a), (h) & (i) [motion to compel further response; sanctions].)

In short, Kelly has failed to demonstrate that the family court's September 1, 2021 temporary spousal support order constituted an abuse of discretion.

## DISPOSITION

The temporary spousal support order is affirmed. Stephen is to recover his costs on appeal.

_____

Humes, P.J.

WE CONCUR:

_____

Margulies, J.

_____

Banke, J.

*In re Marriage of Valen* A164029

16